Filed 2/10/22  In re Emma S. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re EMMA S. et al., Persons Coming Under the Juvenile Court Law. | B314100 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>J.F.,<br><br>　　Defendant and Appellant. | Los Angeles County Super. Ct. No. 20LJJP00331A–C |

　　APPEAL from orders of the Superior Court of Los Angeles County, Michael C. Kelley, Judge. Affirmed.

　　Megan Turkat-Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

　　Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

J.F. (mother) appeals from the juvenile court's orders at a six-month review hearing concerning her three children, all of whom had previously been declared dependents of the court and removed from her care. Mother contends the Department of Children and Family Services (Department) did not adequately comply with its duty of further inquiry under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) regarding her eldest daughter. We affirm.

## BACKGROUND

On May 28, 2020, the Department filed a dependency petition alleging jurisdiction over Emma S. (age 13), Lucy M. (age 8), and Donna M. (age 5) under Welfare and Institutions Code section 300, subdivisions (a), (b)(1), and (j).[1] Emma is the daughter of Sam S. (father). Lucy and Donna are the daughters of Richard M.[2]

The petition alleged that mother failed to protect the children from domestic violence committed by her male companion, James V. (count b-1), and mother's history of substance abuse and current marijuana abuse renders her incapable of caring for the children (count b-3).[3] On July 17, 2020, the Department filed an amended petition adding allegations of

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

[2] Only mother has appealed, and the issue on appeal concerns only Emma.

[3] The petition also alleged four additional counts (a-1, b-2, b-4, and j-1) concerning James, which the Department later dismissed.

domestic violence between mother and Richard (counts a-2 and b-5), Richard's physical abuse of all three children (counts a-3 and b-6), and marijuana and heroin use by father (count b-7).

At the detention hearing, the court ordered the children to be detained from mother and to remain with the maternal grandmother. James was ordered not to have contact with the children. Mother and both fathers were granted monitored visitation.

Mother and Richard completed Parental Notification of Indian Status (ICWA-020) forms indicating no known Indian ancestry. Father, however, informed the court that he may have Indian ancestry with the Assiniboine and Sioux Tribes of Fort Peck. The court ordered the Department to investigate father's ancestry and found there was no reason to believe that ICWA applied to mother, Richard, Lucy, or Donna.

At the July 17, 2020 adjudication hearing, mother pled no contest to counts a-3, b-1, b-3, and b-6. The court sustained those counts, as amended, as to mother; sustained count b-7 concerning father after striking the reference to heroin; and sustained counts a-2, a-3, b-5, and b-6 concerning Richard.

Meanwhile, the Department had started investigating father's Indian ancestry. Father revealed to the Department that his mother (Emma's paternal grandmother) had Indian ancestry through the Assiniboine and Sioux Tribes of Fort Peck. A few days later, the Department spoke with the paternal grandmother. She explained that her mother (Emma's paternal great-grandmother) was a registered member of the Assiniboine and Sioux Tribes of Fort Peck. She provided the Department with her mother's tribal enrollment number, disclosed that she herself was registered "for medical benefits only" but was "not a fully

registered tribe member," and provided biographical information for the paternal great-grandmother and extended family members.

A week later, the Department mailed certified copies of ICWA-030 notices with return receipts to the parents, the Secretary of the Interior, the Bureau of Indian Affairs, and the Assiniboine and Sioux Tribes of Fort Peck. The Department later filed copies of the notices and return receipts with the court.

On August 12, 2020, the Department informed the court that it had received correspondence from the Assiniboine and Sioux Tribes of Fort Peck indicating Emma was not eligible for enrollment. The Department included a form provided by the Assiniboine and Sioux Tribes of Fort Peck that stated Emma "[i]s not eligible for enrollment." The form identified Emma, mother, father, and their birthdates and was signed on July 9, 2020, by the Enrollment Officer, who certified that enrollment records had been reviewed and the information provided was true and correct. The Department also provided a letter from the ICWA Program Manager for the Assiniboine and Sioux Tribes of Fort Peck that stated Emma was neither an enrolled member of the tribes nor eligible for enrollment. The letter identified Emma, mother, father, and their birthdates.

At the disposition hearing, counsel for the Department addressed ICWA: "[Father] did disclose that he is a part of the tribe that is a non-federally-recognized tribe, and notices were signed or contacts were made with the tribe. But it's not a federally recognized tribe. Therefore, I believe that the court can find that ICWA does not apply."

The court asked, "what is the name of the non-federally-recognized tribe that you were referring to?" Counsel replied, "I

4

would actually note that the Department did receive correspondence from [the] Assiniboine and Sioux Tribes [of] Fort Peck indicating that Emma … is not eligible for enrollment."

The court concluded, "So even if it were a federally recognized tribe, which it is not, so this child would not be an Indian child." The court then held that ICWA did not apply, removed Emma from parental custody, ordered reunification services, and set a six-month review hearing.

At the April 8, 2021, six-month review hearing, the court found it would be detrimental to return the children to parental custody, ordered continued reunification services, and set a 12-month review hearing.

Mother filed a timely notice of appeal identifying the April 8, 2021 findings and orders as the subject of the appeal.

## DISCUSSION

Mother contends the Department did not substantially comply with its further inquiry duties under ICWA because it failed to provide all relevant information to the tribes. We disagree.

1.    **ICWA**

ICWA was enacted " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture … .' [Citation.]" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8 (*Isaiah W.*); see 25 U.S.C. § 1902.) Under ICWA, an " 'Indian child' " is "any unmarried person who is under age eighteen and is either (a) a member of an Indian

5

tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see also § 224.1, subd. (a) [adopting federal definition of "Indian child"].) It is up to the tribe to decide whether a child is an Indian child under ICWA. (*Isaiah W.*, at p. 15.)

"[T]he burden of coming forward with information to determine whether an Indian child may be involved … in a dependency proceeding does not rest entirely—or even primarily—on the child and his or her family." (*In re Michael V.* (2016) 3 Cal.App.5th 225, 233.) Rather, "[j]uvenile courts and child protective agencies have 'an affirmative and continuing duty to inquire' whether a dependent child is or may be an Indian child." (*Ibid.*; see also *Isaiah W., supra*, 1 Cal.5th at pp. 9–11; § 224.2, subd. (a).)

This affirmative duty to inquire comprises a two-step process. First, if a child is removed from his or her parents and placed in the custody of a county welfare department, the department has a duty to "ask[ ] the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child *is, or may be*, an Indian child … ." (§ 224.2, subd. (b), italics added.) The court must make a similar inquiry when the parents first appear in court: "[T]he court shall ask each participant present in the hearing whether the participant *knows or has reason to know* that the child is an Indian child." (§ 224.2, subd. (c), italics added.) The court's duty of initial inquiry includes requiring each party to complete California Judicial Council Form ICWA-020, Parental Notification of Indian Status. (Cal. Rules of Court, rule 5.481(a)(2)(C).)

6

Second, if the court or social worker has "*reason to believe that an Indian child is involved in a proceeding*," the court or social worker must "make further inquiry regarding the possible Indian status of the child," by, among other things, interviewing the parents and extended family members, and contacting any tribe that may reasonably be expected to have information about the child's membership, citizenship status, or eligibility. (§ 224.2, subd. (e), italics added; see § 224.3, subd. (a)(5)(C).)

If, after the initial and further inquiries, there is *reason to know* that an Indian child is involved, notice must be provided to the parent, legal guardian, or Indian custodian and the child's tribe. (§ 224.2, subd. (f).) There is reason to know a child is an Indian child if any one of the six statutory criteria is met. (*Id.*, subd. (d).)

We review ICWA-related matters for substantial evidence. (*In re D.N.* (2013) 218 Cal.App.4th 1246, 1251.) But, "where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied. [Citation.]" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051, fn. omitted.)

## 2. The Department complied with its duty of further inquiry.

There appears to be split of authority about when, under California's revised ICWA statutes, further inquiry is required. (Compare *In re A.M.* (2020) 47 Cal.App.5th 303 with *In re Austin J.* (2020) 47 Cal.App.5th 870.) We need not resolve that issue, however, because here, the Department does not dispute that it was required to inquire further. The question before us, therefore, is whether that further inquiry was sufficient. We conclude it was.

7

Mother contends the ICWA-030 notices sent to the tribes in this case were insufficient because they lacked complete biographical data and did not provide all the information the paternal grandmother had supplied to the Department. The notices contained: father's name, birthdate, and current and former addresses; the paternal grandmother's married and maiden names, birthdate, and current address; the paternal grandfather's name and birthdate; the paternal great-grandmother's name, birthdate, place of birth, and tribal enrollment number; and information about other great-grandparents. But, mother argues, the notices failed to note that the paternal grandmother was registered for medical benefits and to provide her registration number. Mother also notes that although birth dates were provided for one set of Emma's great-grandparents, the notices did not include birthdates for either great-grandmother Betsy S. or great-grandfather Raymond S.

"Notice given by DCFS pursuant to ICWA must contain enough information to permit the tribe to conduct a meaningful review of its records to determine the child's eligibility for membership." (*In re S.E.* (2013) 217 Cal.App.4th 610, 615.) We conclude the notices in this case were sufficient because they provided the key information: the name, birthdate, birth place, and tribal enrollment number of Sharon H., the paternal great-grandmother who belonged to the Assiniboine and Sioux Tribes of Fort Peck. This information, combined with the complete biographical information provided for Sharon's daughter, the paternal grandmother, allowed the tribes to determine for themselves that the grandmother was enrolled for medical benefits. In addition, because Emma's possible Indian heritage came from father's *maternal* grandmother, we are not persuaded

8

that the missing birthdates for father's *paternal* grandparents would have helped matters. (Compare *In re Breanna S.* (2017) 8 Cal.App.5th 636, 654 [ICWA notice deficient where "[s]ome of the omitted information pertained directly to the maternal great-grandmother," who was the ancestor that mother and the maternal grandmother had identified as a tribal member], disapproved on other grounds by *In re Caden C.* (2021) 11 Cal.5th 614, 637, fn. 6.)

Nor do we agree with mother about the significance of the Department's claim at the disposition hearing that the Assiniboine and Sioux Tribes of Fort Peck lacked federal recognition. The court's holding did not rest on the tribes' claimed lack of federal recognition. Instead, the court clearly held that "even if it were a federally recognized tribe … this child would not be an Indian child." As such, the error was harmless.

## DISPOSITION

The orders are affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


                                              LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.